Mary Rehma STRUTTMANN, By Mrs. Clark Mosley, Her Next Friend, Plaintiff-Appellant,

v.

Benny B. STRUTTMANN, Defendant-Respondent.

No. 33767.

St. Louis Court of Appeals, Missouri.

Jan. 26, 1971.

Edwards, Seigfreid & Runge, Mexico, for plaintiff-appellant.

Van Matre & Van Matre, Mexico, for defendant-respondent.

DOWD, Judge.

The plaintiff filed suit for divorce and asked for custody of the minor son who was 3 years and 9 months old at the time of trial. Defendant-husband filed an answer in which he admits the marriage and that the son was born of the marriage but denied the indignities pleaded by plaintiff and asked that plaintiff's petition be dismissed. Neither party filed a count in equity asking for custody of the minor child in the event a divorce was denied.

After a protracted trial of the issues raised by the pleadings, the court denied plaintiff a divorce and awarded defendant the general custody of the minor son. The court made detailed provisions for the plaintiff to have reasonable visitation and temporary custody of the child.

The plaintiff has appealed the judgment denying her a divorce and awarding the general custody of the minor child to defendant.

The parties were married on May 22, 1965. The plaintiff was 15 years old at

time of the marriage. A son, John Henry Struttmann was born of the marriage. Plaintiff's testimony was to the following effect. The parties were separated on August 9, 1969 as a result of trouble which occurred the day of plaintiff's mother's second marriage. On that date, plaintiff was in a tavern with her niece and two other girl friends. The defendant was asked by a man if he could dance with plaintiff. Defendant agreed. They "danced far apart." · Plaintiff got grease on her dress.

When she left the tavern her husband asked about the grease on her dress and then he choked her and called her names. Her step-father stopped her husband from beating her and then her husband and the step-father fought. Plaintiff admitted on cross-examination that after she left the tavern she had an argument with her mother on the street and she called her mother names and her mother slapped her. Three years before on Christmas day, defendant struck her while she was pregnant because she wouldn't drink an alcoholic beverage and threatened to kill her and her mother with a gun. Defendant has called her names and has struck her on other occasions. Defendant has been intoxicated frequently and his temper is worse when he is drinking. Defendant pushed plaintiff against a window and her elbow went through the window. Defendant falsely accused her of being unfaithful.

For a month following the separation, plaintiff lived with a girl friend and then lived with her mother and step-father. Plaintiff's step-father testified that defendant choked plaintiff on the street and he had to stop him. Plaintiff's mother's testimony corroborated plaintiff's testimony that defendant struck plaintiff while pregnant and threatened to kill her and plaintiff.

Plaintiff and defendant lived with her mother for the first two years of the marriage. Plaintiff's mother also testified that defendant had a bad temper when intoxicated and has beat and choked plaintiff. Her mother admitted slapping her on the street.

Defendant testified, along with other witnesses, to the misconduct of the wife and adduced the following evidence. Delbert Holliday testified that he visited plaintiff about 30 times after defendant left for work at night. He would arrive at about 11:00 or 11:30 p. m. and would stay for two or three hours. He would kiss her but never had sexual relations with her because " * * * she said she had this, this some kind of infection or something." He quit seeing plaintiff in April because of an argument.

Defendant testified that as he left early for work one evening in February of 1969, he saw an auto pull into his driveway. He returned, looked through the window and saw Delbert Holliday and plaintiff, " * * they was just on the bed there with the little bed light on but I couldn't tell whether they was doing anything or not." He watched them for five or ten minutes and then left. This occurred at about 11:45 p. m. Defendant's niece saw Holliday's auto in plaintiff's driveway in February, 1969 at about 11:30 p. m. and also saw plaintiff alone in an automobile with another man. Defendant further testified that in July, 1969, the alarm failed to go off and he overslept. Somebody knocked at the door at about 11:50 p. m. and defendant answered the door and "it was a Webb boy and some other guy there and I asked them what they wanted and they couldn't give me no answer, * * * they just started stuttering * * * so I politely asked them to leave." Defendant also testified that plaintiff had a female infection and plaintiff and defendant had no relations for three or four months while she was being treated for this condition.

Defendant further testified that plaintiff drinks a lot, curses, didn't clean the house and didn't change the diapers. Defendant denied choking plaintiff or throwing her down in December, 1966 and denied pulling a gun on plaintiff's mother and denied he

ever tried to force his wife to drink an alcoholic beverage. Defendant denied that the Christmas incident, about which plaintiff testified, ever occurred. Another witness testified that on the wedding day she heard plaintiff call her mother an "s. o. b." and her mother slapped her and she heard plaintiff and defendant arguing and heard defendant say "I want Johnny" and plaintiff answer "You can have him, I don't want him, take him * * *."

Defendant also testified that on the day of the separation plaintiff was dancing with a man "all greasy and dirty" and that he asked plaintiff to leave the tavern. When she left, defendant asked her about the grease spots on her dress and she called him names and he then shook her and slapped her and that he was then struck by her step-father and defendant hit him back and plaintiff then told defendant to "* * * take Johnny and stick him * *." Plaintiff then called her mother an "s. b." and her mother struck her.

Defendant has had custody of the minor son since the separation. After the separation, he returned to their home and waited two weeks for his wife to come back and then moved in with his sister. He has quit drinking since the separation and has called his wife and apologized to her and has asked her to come back. Since the separation, plaintiff and defendant had a conference with the juvenile officer and arrangements were made for plaintiff to see her son.

In rebuttal, plaintiff's mother testified that on one occasion defendant was beating plaintiff and then pulled a gun on her and threatened to blow her head off when she tried to stop defendant from beating her daughter. She also testified that plaintiff kept a clean house and kept the baby neat and clean. She admitted she slapped plaintiff on the street because she was making a lot of noise but didn't hear her daughter call her a name.

Plaintiff in rebuttal denied she had a venereal disease but testified that she had a female problem. Plaintiff denied that Delbert Holliday ever visited her in her home. She only saw him three times; once at the hospital and twice passed him on the street.

Plaintiff contends on this appeal that (1) the court erred in not granting her a divorce and custody of the minor son and (2) the court erred in making an award of custody of the minor child of the parties which was not preceded by a decree of divorce. Defendant failed to file a brief.

■ Since this is a divorce action, it is our duty to review all the evidence and reach our own conclusion as to the proper judgment to be entered. The judgment will not be set aside unless it is clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R. There is direct conflict in the testimony of the witnesses here; therefore, the proper disposition of this case depends upon the credibility of the witnesses and we are bound to give great deference to the findings of the trial court. Hugeback v. Hugeback, Mo.App., 444 S.W. 2d 23[1].

■ Applying this rule to the record in this case, it is obvious that the court did not err in refusing to award the plaintiff a decree of divorce. The record shows that plaintiff was guilty of serious misconduct. The evidence shows that a man visited her home about 30 times late at night after her husband had left for work and that he would kiss her. On one of these occasions, this man was seen by defendant on the bed with plaintiff at about 11:45 p. m. Another witness saw this man's auto in plaintiff's driveway late at night. There was evidence that plaintiff cursed her mother in public, drinks excessively, did not clean the house nor change the baby's diapers. There was other evidence in the record as to plaintiff's misconduct.

Plaintiff did not carry the burden of establishing that she was the innocent party.

While plaintiff did deny the misconduct, the trial court chose not to believe her denial. We agree with the trial court's finding as to plaintiff's credibility.

■ However, we agree with plaintiff's next contention that it was error in an action for divorce for the trial court to make an award of custody where the decree of divorce was denied. Klenk v. Klenk, Mo.App., 282 S.W. 153[4]; Lohmann v. Lohmann, Mo.App., 246 S.W.2d 368[2]; Price v. Price, Mo.App., 311 S.W. 2d 341[5].

An action for divorce is purely a statutory proceeding. Klenk v. Klenk, supra; Schumacher v. Schumacher, Mo.App., 223 S.W.2d 841. Our statute concerning divorce, and the care, custody and maintenance of children is § 452.070, RSMo 1969, V.A.M.S. which provides in part: *"When a divorce shall be adjudged*, the court shall make such order touching * * * the care, custody and maintenance of the children, or any of them, as, from the circumstances of the parties and the nature of the case, shall be reasonable, * * *."* Emphasis ours.

The primary object of a divorce action is to dissolve the marital status; and that incidental thereto, the court is authorized as a part of its decree to make provisions regarding the custody and maintenance of minor children. Klenk v. Klenk, supra; Schumacher v. Schumacher, supra.

Therefore, if a provision pertaining to custody is incidental to the primary object of a divorce action, it logically follows that a decree of divorce must accompany or precede any order of a court in a divorce action awarding custody and maintenance of children. Klenk v. Klenk, supra; Lohmann v. Lohmann, supra; Price v. Price, supra.

The court in Klenk in discussing this section (452.070) stated at l. c. 157:

"This section of the law would seem to indicate that it is only when a decree of divorce is granted that the court has authority to award the children to either of the parents. It must be borne in mind, however, that we are speaking now only of the right of the court, as incident to the suit for the decree, to determine the custody of the children, and not of the general powers of a court of equitable jurisdiction independent of statute."

Our Supreme Court in an en banc decision (State ex rel. Stone v. Ferriss, Mo., 369 S.W.2d 244) held in a divorce action that the trial court had jurisdiction to make an ad interim order with respect to temporary custody of children pending husband's appeal from an award of custody to wife upon pleading and proof that the children's welfare pending the appeal was materially endangered and this jurisdiction was not divested by the husband's giving a statutory supersedeas bond. In that case there was a separate count in equity predicated primarily upon grounds that the welfare of · the minor children required that their custody be in defendant. State ex rel. Stone v. Ferriss, supra, at l. c. 249 cited Price, supra, and pointed out that the pleadings in Price, supra, like those before us, did not invoke " '[t]he inherent jurisdiction of a court of equity to provide for the comfort and wellbeing of minor children as against the parent.' "

This being strictly a divorce action with no pleading for custody based upon equitable grounds before the trial court it was error for the trial court to award custody of the minor child when it had denied a divorce.

That portion of the judgment denying the plaintiff a divorce is affirmed; that portion of the judgment awarding custody to the defendant is reversed. All costs to be taxed against defendant.

BRADY, P. J., and WOLFE, J., concur.