Aurelia URBANEK, Plaintiff-Appellant,

v.

James Eugene URBANEK et al.,
Defendants-Respondents.

No. 35019.

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 11, 1973.

Schnapp, Graham & Reid, Fredericktown, for plaintiff-appellant.

Strom & Strom, Cape Girardeau, for defendants-respondents.

SIMEONE, Acting Presiding Judge.

This is an appeal by plaintiff-appellant, Aurelia Urbanek, from a judgment of the Circuit Court of Madison County entered on November 16, 1972, dismissing her petition and amended petition praying for divorce, alimony, child custody and support, attorneys' fees and partition of certain property.

Aurelia Urbanek was married to defendant-respondent, James Eugene Urbanek, on July 29, 1966 and lived in the State of Mississippi as husband and wife. In 1969 a daughter, Karrie Lynn Urbanek, was born of the marriage. The parties lived together as husband and wife until June 25, 1971 when Aurelia returned with her daughter to Madison County, Missouri, where apparently she resided prior to her marriage. James did not return with Aurelia to Madison County.

James received a monthly rental income of $100.00 from a farm located in Madison County and admitted in his answers to certain requests for admission filed by the plaintiff that he received such amounts from June 25, 1971 through July 7, 1972 (except for the months of May and June, 1972). As stated, in June, 1971, Aurelia left James and came to Missouri while James remained a resident of Mississippi. From June, 1971 the parties lived apart, Aurelia and Karrie in Missouri and James in Mississippi.

The events which led to these proceedings began on December 16, 1971. On that date James and a friend came to Marquand in Madison County and took Karrie from the home of a babysitter who was caring for Karrie while Aurelia was teaching school. After James and his friend took Karrie, and were on their way to Cape Girardeau to return to Mississippi, they were stopped in Bollinger County as a result of bulletins issued for their arrest by the sheriff of Madison County. James and the other man were arrested. They were returned to Madison County and while in jail were served with papers in the divorce suit filed by Aurelia on the same date, December 16, 1971.

Aurelia's petition for divorce alleged that she was a bona fide resident of Madison County and "the acts alleged herein took place in Madison County, Missouri. . . . ." The petition further alleged the

date of marriage, the date of the separation and that "Defendant is a vagrant,[1] an able bodied man and he has neglected and refused to provide for the support of his family," although he owns real estate in Missouri and receives $100.00 a month rent on real estate. She also alleged that James took Karrie and that such acts "have rendered Plaintiff's condition intolerable and future life with the Defendant impossible." In this original petition she prayed: (1) to be divorced from the bonds of matrimony, (2) an award for the custody of Karrie, (3) for child support, (4) alimony and (5) for a reasonable attorneys' fee. On January 14, 1972 James filed a motion to dismiss the petition upon a special appearance alleging the court had no jurisdiction to maintain the cause.

Before any further proceedings were held in Madison County in Aurelia's suit for divorce, James, upon his return to Mississippi filed a petition for divorce from Aurelia in the Chancery Court of Lafayette County, Mississippi on December 29, 1971. On February 29, 1972, the Chancery Court granted a divorce to James upon default after "being satisfied that the Defendant [Aurelia] . . . is properly before this Court by process duly and legally had, and that the Court has jurisdiction in this cause. . . ." The court granted to James a "full, complete and absolute divorce from the Defendant. . . ." In its decree, the Mississippi court however did not determine the rights of custody of Karrie nor child support and expressly held that "All questions relative to the minor child are hereby pretermitted for the reason that said child is not and was not at the time of the filing of this bill, within the jurisdiction of this court."

The events then shift back to Madison County, Missouri. On February 25, 1972, the attorney for James mailed to the Circuit Clerk a sealed envelope and informed the clerk not to open the same until instructed to do so by the attorney. On February 29, the attorney instructed the clerk to open the sealed envelope which contained a petition for partition of certain real estate owned by the parties as tenants by the entirety. Then on March 6, 1972, Aurelia filed her motion for temporary alimony, child support and attorneys' fees. And on March 20, a duly authenticated copy of the Mississippi divorce decree was filed in the Madison County Circuit Court. On that date also, the attorney for James orally moved to dismiss Aurelia's petition. The trial court granted plaintiff thirty days within which to file briefs, but none was ever filed.

Some two months later, on May 5, Aurelia filed her "First Amended Petition For Divorce" in four counts. Count I, after reciting facts, prayed for divorce, child custody and support, alimony and attorneys' fees. Count II alleged that the Mississippi court did not have jurisdiction to grant a divorce because the Missouri case had been filed prior to the filing of the Mississippi cause, and prayed for the same relief as in Count I. Count III alleged that in the event that the Missouri court should find that the Mississippi court did have jurisdiction to render a divorce, then the Missouri court is entitled to award her the custody of Karrie, child support, alimony and attorneys' fees. Count IV alleged that in the event the trial court finds that Mississippi had jurisdiction to grant a divorce, she be permitted to partition the real estate because James' action in securing a divorce did not divest the Missouri court from settling property rights. In this count she prayed for partition of the real estate, and that the property be sold, the proceeds divided and James' interest in the proceeds be held to satisfy alimony, attorneys' fees, and child support until the child reaches majority. This first amend-

---

1. This is one of the grounds for divorce under the present law. § 452.010, RSMo, 1969, V.A.M.S. But compare Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); City of St. Louis v. Burton, 478 S.W.2d 320, 322 (Mo.1972) and Annot, 25 A.L.R.3d 836 (1969).

ed petition was filed without permission of the trial court.

Aurelia, somewhat later, moved for an order permitting her to file a proposed second amended petition and to add parties defendant. On July 17, 1972 she filed her second amended petition. This second amended petition was also in four counts and similar to the first in all respects except that in Count IV she alleged that the real estate had been sold, on July 7, at trustee's sale, leaving a balance of $24,500 after the encumbrances had been paid and all expenses of the sale had been satisfied. This count also alleged that a deed for James' half interest in the property had been executed to J. M. Ash and was recorded in Madison County. Count IV prayed that the trustee be ordered to pay over to her one-half of the balance of the proceeds and that the court order the other half be paid to her for child support, alimony and attorneys' fees.

Two days after the filing of the second amended petition, James filed his amended motion to dismiss the petition upon special appearance contending that the Mississippi decree is to be given full faith and credit so that the court should dismiss Counts I and II of the amended petitions. As to Counts III and IV, James urged dismissal because these counts alleged new causes of action against defendant upon which proper service had not been obtained so that the court lacked jurisdiction. Also as to Count IV of the amended petitions, defendant urged that a prior suit for partition had been filed by him so that his partition suit should take precedence over Aurelia's Count IV seeking partition, and further because James had conveyed his interest in the partitioned property to J. M. Ash, and no jurisdiction had been obtained over him, the court had no jurisdiction to grant relief on this count.

On August 5, 1972, James, through his attorney, filed a verification of his oral motion to dismiss made to the court on March 20 for the purpose of making the

"record clear" in view of the court's announcement previously made that it would sustain the oral motion unless prohibited. Aurelia did seek prohibition in this court, but the petition for preliminary writ was denied by us. The circuit court, therefore, on November 16, 1972, entered its order dismissing the original petition and the first and second amended petitions. This appeal by Aurelia followed.

The appellant, Aurelia, contends here that the trial court erred in dismissing the various petitions because they stated a cause of action for divorce, custody of Karrie, child support, alimony, attorneys' fees and partition of the real estate. She argues that Missouri has the sole and exclusive jurisdiction to decide these questions because she first filed suit and obtained personal service on James prior to his filing suit for divorce in Mississippi. In her brief she contends that the actions of James, apparently the filing of suit for divorce in Mississippi, constitute a fraud upon the Missouri courts and upon her. She contends that she should be permitted to proceed with the counts in the amended petitions notwithstanding the Mississippi decree.

The respondent on the other hand urges that the trial court properly dismissed the petitions because (1) the parties were divorced by the decree of the Chancery Court of Mississippi which is entitled to full faith and credit under Article IV, § 1 of the United States Constitution, and (2) the trial court had no jurisdiction to consider the amended petitions for child custody and support, alimony, attorneys' fees and partition independently of the dismissed divorce action and properly exercised its discretion in dismissing these counts and also for the reason that a separate partition action filed by James was already pending.

The respondent argues that when an action for divorce is dismissed, the "court is without power to award custody of minor children" and presumably he also contends that the court is also without power to

award alimony, child support and attorneys' fees if an action for divorce is dismissed. In effect, respondent urges that if the Missouri court is compelled to recognize the Mississippi divorce decree and must dismiss the plaintiff's divorce action, the court is without jurisdiction to determine the incidents of divorce—child custody and support, alimony and attorneys' fees.

On oral argument in this court, the attorney for Aurelia informed the court that, since the proceedings in the trial court, she has remarried so that some of the issues raised by the parties in their briefs have decreased in importance and have become moot. It is unnecessary for us, therefore, at this stage to determine the issue whether the wife, after the decree of divorce in Mississippi is entitled to alimony [2] both periodic and temporary.[3]

As we view the central and pivotal issue in the present posture of this appeal, it is whether, after a decree of divorce has been rendered in another state in favor of the husband divorcing the parties from the bonds of matrimony, the State of Missouri has jurisdiction to determine the issues of child custody when the child is physically present in the State, child support and attorneys' fees. In the posture of this appeal it becomes necessary, therefore, to decide whether the circuit court has jurisdiction to determine the issues of child custody,

child support and attorneys' fees if, upon recognition of the Mississippi divorce decree, the wife is denied a divorce from the bonds of matrimony. Or, in other words, does the circuit court in Missouri have jurisdiction to determine these issues when a divorce is denied to the wife because of a foreign ex parte divorce in favor of the husband? Subsidiary thereto, we must also determine whether the trial court erred in dismissing the partition count in Aurelia's petitions.

■ In determining the issues in this case, the final responsibility is ours, and although the orders of the trial court do not bind us, we regard them with deference, and the judgment is not to be set aside lightly. Struttmann v. Struttmann, 463 S.W.2d 600 (Mo.App.1971).

■■ There is no doubt that under the Full Faith and Credit Clause of the Constitution of the United States, Article IV, § 1 and implementing legislation, 28 U.S.C. § 1738, we recognize the Mississippi divorce decree as it relates to the termination of the marriage status of the husband and wife. Such decree is conclusive as to all matters except jurisdictional facts. Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). The Mississippi decree recited that the defendant [Aurelia] "is properly before this Court by process duly and legally had." There is

2. Missouri decisions, unlike other states, appear to hold that a decree of divorce obtained ex parte by the husband in another jurisdiction terminates her rights of alimony. Keena v. Keena, 222 Mo.App. 825, 10 S.W.2d 344 (1928); Hanna v. Hanna, 224 Mo.App. 1142, 32 S.W.2d 125 (1930); Hill v. Hill, 236 S.W.2d 394 (Mo.App.1951). Missouri has not as yet it seems recognized the concept of "divisible divorce." Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); Kreiger v. Kreiger, 334 U.S. 555, 68 S.Ct. 1221, 92 L.Ed. 1572 (1948); Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); Stambaugh v. Stambaugh, 222 Pa.Super. 360, 294 A.2d 817 (1972); Dackman v. Dackman, 252 Md. 331, 250 A.2d 60 (1969); comments, 77 Dickinson L.Rev. 401 (1973); 30 Md.L.Rev. 63 (1970).

Some states have enacted statutes which confer upon a former wife the right to claim alimony after divorce. And in some jurisdictions the rule prevails in the absence of statute. See cases collected in Annot., 28 A.L. R.2d 1378, 1396–1412 (1953).

In the newly enacted "no-fault" divorce law, H.B. 315 in the 77th General Assembly effective January 1, 1974, § 4 thereof provides for "maintenance or support following the dissolution of the marriage." The new law is not applicable to cases pending on appeal. § 24, H.B. 315.

3. Since the Mississippi decree was rendered prior to the motion filed by the plaintiff for temporary alimony, the court was without jurisdiction to grant such motion relating to alimony. Hanna v. Hanna, *supra.*

no evidence that James was not a bona fide domiciliary of the state of Mississippi and hence the decree must be given full faith and credit in Missouri.[4]

The fact that Aurelia filed her divorce action prior to the Mississippi action filed by James in Mississippi does not require that full faith and credit of that decree be denied.[5] Although the Missouri action was filed first, the Mississippi Chancery Court granted its decree prior to any trial or hearings in the Missouri cause, and being presumptively valid, the decree must be held to be valid here. Williams v. Williams, 53 Mo.App. 617 (1893).

■ Neither do we find that James committed a fraud on the Missouri Courts or upon Aurelia in procuring the Mississippi decree. He and Aurelia had resided in Mississippi prior to June, 1971, it was their matrimonial domicile and for all that appears it was and continues to be his bona fide domicile.

■ We hold, therefore, that the Mississippi decree is to be accorded full faith and credit and that the trial court in dismissing the original petition and Counts I and II of the amended petitions relating to divorce and alimony was not in error. Neither do we believe the court erred in dismissing Count IV of the plaintiff's amended petitions. James' petition for partition was filed first and under the record, that cause is still pending; the trustee has funds in its hands; Aurelia is a party to that proceedings and would have the opportunity to participate in that action.

The fact that we hold the Mississippi decree should be given full faith and credit and that the court did not err in dismissing those portions of the amended petitions relating to divorce and partition does not, however, dispose of the issues whether the court had jurisdiction to determine child custody, child support and attorneys' fees in reference thereto.

■ It is the normal and general rule in this state, and often repeated, that where a divorce is denied, it is error for the trial court to determine and award custody and maintenance of a child. § 452.070, RSMo, 1969, V.A.M.S. provides: *"When a divorce shall be adjudged,* the court shall make such order touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children . . . as . . . shall be reasonable. . . ."* (Emphasis added.) In Struttmann v. Struttmann, *supra,* this court held that in a "strictly" divorce action, it was error for the trial court to award custody of a minor child when the court denied a divorce. It was said that a "decree of divorce must accompany or precede any order of a court in a divorce action awarding custody and maintenance of children." 463 S.W.2d at 603. See also Buettmann v. Buettmann, 465 S.W.2d 868 (Mo.App.1971); Klenk v. Klenk, 282 S.W. 153 (Mo.App.1926). This principle is applied in decisions where the wife is usually denied the divorce on the merits.

■■ But this general principle is not controlling in all and any circumstances. In a situation where the divorce is denied on the grounds of the recognition of a foreign decree and the divorce decree is in favor of the husband, this does not terminate a father's responsibility to support the minor children. A foreign divorce decree does not divorce a father from his minor children, nor the obligation to provide for them. Even though a foreign decree may

---

4. While a decree may be collaterally attacked for lack of jurisdictional facts, it is the policy of this state to give full faith and credit to the decrees of sister states and to recognize the validity of such decrees. Trumbull v. Trumbull, 393 S.W.2d 82, 88 (Mo.App.1965), and cases cited therein.

5. The pendency of an action for divorce in one state is no bar to a subsequent suit brought in a sister state. The remedy is to apply to the court in which the subsequent suit is brought to stay the proceedings until the suit here is determined. See discussion in State v. Jones, 349 S.W.2d 534, 538–539 (Mo.App.1961).

divorce the husband and wife from the bonds of matrimony, the children are not divorced from the father and his responsibilities. The Mississippi decree expressly pretermitted all questions relative to the minor child.

■ A father's responsibility continues even though a decree of divorce is granted by a foreign court. I. v. B., 305 S.W.2d 713, 721–722 (Mo.App.1957). And it has often been held by our courts that the general principle where the wife is denied a divorce, the court has jurisdiction to award custody and maintenance where there is a separate count in equity for child custody. Buettmann, *supra*, Struttmann, *supra*.

■ The right and power to determine custody and maintenance of children is not born out of statute, but exists because of the inherent power of courts exercising equitable jurisdiction to care for and provide for a minor child. State v. Ferriss, 369 S.W.2d 244 (Mo. banc 1963). Where a minor child is physically present and domiciled in this state, thus giving the Missouri court jurisdiction to determine custody [6] the court has inherent jurisdiction to adjudicate the custody and maintenance of the child.

■ Hence, even though a divorce is denied the wife, it does not therefore follow that the court is without jurisdiction to determine rights of custody and maintenance of a child born of the divorced parents. I. v. B., *supra*; R. v. E., 364 S.W.2d 821, 823 (Mo.App.1963); or to render judgments for money for expenditures subsequent to a decree of divorce. Kelly v. Kelly, 329 Mo. 992, 47 S.W.2d 762, 81 A. L.R. 875 (banc 1932); Shannon v. Shannon, 97 Mo.App. 119, 71 S.W. 104 (1902).

■ Matters of child custody and support are legitimate matters to be determined either in an independent proceeding or on motion or by amendment to the original petition after a divorce is rendered in favor of the husband and a decree is denied the wife on the ground of recognition of a foreign decree. Where, under the facts here, the child is in Missouri, the wife is domiciled here, the wife amended her petition to include a count for custody and child support, we believe that the court had jurisdiction to determine these matters. We therefore believe that Count III of the amended petitions stated a cause of action, and that the trial court had jurisdiction to hear and determine the issues of child custody and support *even though a decree of divorce was denied.*

■ Although the plaintiff filed her amended petitions without leave of court, the plaintiff had the right to amend her pleadings as a matter of course before answer, or responsive pleading. Rule 55.53 V.A.M.R.[7] and § 509.490 provide that "A party may amend his pleading as a matter of course at any time a responsive pleading is filed and served. . . ." Amendments to pleadings should be liberally allowed and are favored under our modern rules. Especially should this be true when we are dealing with the custody and support of a minor child.

Defendant contends that by amending the petition and inserting new counts that plaintiff has asserted new or additional claims for relief which necessitated new service upon defendant. Rule 43.01 provides that when new or additional claims are asserted they shall be served in the manner provided for service of summons.

■ But plaintiff did not assert new or additional "claims" against defendant. The long history of "claim" or "cause of action" is too long and involved to be traced here. Suffice it to say that the modern concept is that "claim"—the term used in our Rules as distinguished from "cause of action"—should be viewed as an

6. See the full and excellent discussion in Kennedy v. Carman, 471 S.W.2d 275 (Mo.App. 1971); Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W.2d 566 (banc 1949).

7. Compare 55.33 effective September 1, 1973.

aggregate of operative facts which give rise to one or more relations between the parties. Where no new or independent claim is asserted, no new service need be had. Miltenberger v. Center West Enterprises, Inc., 251 S.W.2d 385 (Mo.App. 1952); see generally Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25 (1946); Comment, 1953 Wash.U.L.Q. 99, 103, n. 16. As to that portion of Count III relating to custody, we do not believe new and independent claims were asserted by the plaintiff.

■ Under these facts, and for this purpose, the plaintiff did not assert new and different causes of action against the defendant where, as here, the court is compelled to deny a divorce to the wife because of the recognition of a foreign decree. The trial court had jurisdiction over the child and over the defendant and hence had jurisdiction to determine that part of Count III relating to child custody and support.

Lastly, the court also had the power to determine the issue of attorneys' fees for the plaintiff relating to the issues of child custody and support. See discussion in I. v. B., *supra*, 305 S.W.2d at 722.

We conclude, therefore, that the trial court did not err in dismissing the original petition, and Counts I, II, and IV of the amended petitions, but that the court did have jurisdiction to decide and determine the matters relating to the "care, custody and control of the minor child born of the marriage," "support money to support, maintain and keep her minor child" and "a reasonable attorney fee" for such purposes.

The order and judgment of the trial court dismissing Count III of the plaintiff's petition is therefore reversed and the cause is remanded for further proceedings in connection therewith. In all other respects the order and judgment of the trial court is affirmed.

WEIER and KELLY, JJ., concur.