Forest Juel KUESTER, Respondent,

v.

Loleta Mae KUESTER, Appellant.

No. WD 32425.

Missouri Court of Appeals,
Western District.

April 27, 1982.

M. Sperry Hickman, Independence, for appellant.

Gina Graham, Jack Cochran, Cochran, Tyree, Oswald, Barton & McDonald, Blue Springs, for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Forest Kuester filed a petition for dissolution of his marriage with Loleta Kuester and Loleta filed a cross petition seeking separate maintenance, or in the alternative, a legal separation. Loleta denied, under oath, that the marriage was irretrievably broken. The court entered a decree of legal separation on a finding that the marriage was irretrievably broken because each party had behaved, while competent to do otherwise, in such a way that they could not be expected to live with the other. The court divided the marital property equally, awarded Loleta maintenance of $150 per week and attorney fees.

On this appeal Loleta contends there was insufficient evidence to find that the marriage was irretrievably broken; the court erred in refusing her separate maintenance; in awarding an insufficient amount for attorney fees; in the division of marital property; and in failing to ascribe a value to Forest's pension. Affirmed as modified.

Forest and Loleta had been married 34 years when Loleta developed mental problems. She stopped leaving the house and required Forest to do all the shopping. She cut off all social contact with outsiders and removed, over a period of time, all the furniture in the house and placed it in the garage. She removed all of the doors and woodwork in the house and stored them in the garage. She removed cover plates from the electrical outlets, dobbed paint on the walls in the house and painted over most of the windows. She started dressing in a bizarre manner by using old clothes of her grown daughter and some of her husband's old clothes.

An example of her behavior is contained in the testimony of Barbara Kueck who was appointed and acted as Loleta's guardian ad litem in this case. Barbara was the wife of Wallace Kueck who was Forest's cousin. Barbara described a visit to the Kuester's home after Loleta began having her problems. She said there was no furniture in the house and there was a mattress on the floor. She said the kitchen was not being used. There was firewood on the floor in the living room. Metal drums with boards on the top were used as tables and for storage. There was a length of rope glued along the living room floor and Loleta said this was for decoration. The windows were painted over and holes were knocked in the wallboard. The woodwork had been removed, electrical plates were off, and there were two pairs of slacks in the freezer. When Loleta began fixing supper, she put beans in an electric skillet with two pounds of sugar.

Forest testified to his wife's behavior along the same lines as described by Barbara. Forest said about four years prior to the hearing on his petition, Loleta had moved out of the bedroom and they had lived separate, but in the same house, since that time. He said she stopped cooking most of the meals because she had moved the stove out. Cooking was done in an electric skillet and sometimes in the fireplace. Forest said she had shown no affection since she moved out of the bedroom. Forest stated that Loleta had always been nervous and high strung, but when her behavior became so unusual, he tried to get her to go to a physician but she refused. Forest stated that he knew from living with her for 34 years that if he forced her to get medical help for her mental problem she would refuse to return to the home. Forest finally sought help from a court. The record is not clear, but apparently Loleta was ordered confined to Western Missouri Mental Health Center involuntarily. She stayed there six to seven weeks and was diagnosed as schizophrenic, paranoid type. A physician testified that she could not be cured, but her condition could be controlled with drugs and psychotherapy.

When Loleta was about ready to be discharged, Forest discussed with a social worker the daily treatments which Loleta would require. Forest thought, due to his job and the daily travel required to take Loleta for treatment, that it would be better if she could stay in some home close to the place of treatment. The social worker said she would try to arrange this.

In the meantime, the Kueck's had visited Loleta, and when Wallace heard that Loleta would have to stay in a home, he decided it would be better for her to stay at their house. Wallace made arrangements to take Loleta to his home, without discussing it with Forest, and did so. Forest went to the hospital to arrange for Loleta to leave and learned that she had left with the Kuecks the day before.

Loleta was called as a witness by Forest, and from her testimony appeared to understand the proceedings and the questions which were asked. She admitted removing the furniture, doors and woodwork from the house, as well as the odd painting. Her answers were responsive, which was consistent with the testimony that her condition had improved since her discharge from the hospital.

Forest admitted in his testimony that he had engaged in adulterous conduct after Loleta ceased showing any affection.

At the outset it is necessary to comment on the pleadings which were filed. Loleta filed an answer in response to Forest's petition for dissolution and denied, under oath, that the marriage was irretrievably broken. She also filed a cross petition in which she sought separate maintenance, or in the alternative, legal separation. Section 452.-310, RSMo 1978 [1], provides it is necessary in a petition for dissolution or legal separation to allege that the marriage is irretrievably broken. Loleta's cross petition contained no such allegation. Thus her petition did not state facts upon which the court could grant a legal separation on her petition.

Section 452.320.2 provides that if one of the parties denies under oath that the marriage is irretrievably broken, the court shall

1. All statutory references are to RSMo 1978     unless otherwise noted.

consider all relevant factors, and, after hearing, shall make a finding of whether or not the marriage is irretrievably broken. One of the grounds on which the court can make that finding is that the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent.

■■■ It follows from this statutory requirement that the finding of the court that each party had behaved in such a way, while competent, that the other could not be expected to live with that party, did not respond to the statutory mandate. The court was required to find under Forest's petition whether or not Loleta had behaved in such a way that Forest could not be reasonably expected to live with her. However, it is clear from the evidence that there was substantial evidence to support a finding that Loleta had behaved in such a way that Forest could not be reasonably expected to live with her. The omission may be supplied by modifying the judgment. The finding that Forest had behaved in such a way that Loleta could not be reasonably expected to live with him is not supported by the evidence. The only evidence which would support such a finding was his adulterous conduct. Adultery is specifically dealt with in § 452.320.2(1)(a) and requires that a petitioner find it intolerable to live with a respondent who has committed adultery. There was no evidence that Loleta found it intolerable to live with Forest because of his adultery.

Loleta first contends there was insufficient evidence to support the finding that the marriage was irretrievably broken. Although she does not directly contend that her conduct was the result of mental illness and for that reason such conduct could not be said to make it unreasonable for Forest to be expected to live with her, that contention is implicit in her argument. Prior to the adoption of the new dissolution statute, the law was clear in Missouri that a divorce could not be predicated on conduct committed by a person if their mental condition was such that they were incapable of willful and deliberate conduct and could not differentiate between right and wrong with reference to their acts. *Hemphill v. Hemp-*

*hill*, 316 S.W.2d 582, 586[9] (Mo.1958). Section 452.310.5 of the Dissolution of Marriage Act, which became effective January 1, 1974, abolishes the defense of insanity. The comments to § 303 of the Uniform Marriage and Divorce Act, from which the Missouri Act is taken, states that the traditional defenses, including insanity, to a divorce are abolished in the Act so that the sole defense, except for jurisdictional defenses, to a dissolution of marriage or legal separation will be that the marriage is not irretrievably broken.

■■■ As stated, Loleta does not directly contend that acts which were the result of mental illness could not be the basis for conduct which would make it unreasonable for Forest to be expected to live with her. She does contend that the only evidence of her conduct revealed that it was the result of mental illness. The legislature has clearly abolished insanity as a defense. Because divorce, now dissolution, is a purely statutory proceeding, *Struttmann v. Struttmann*, 463 S.W.2d 600, 603[3, 4] (Mo.App.1971), it was within the legislative province to repeal the defense of insanity. The only statutory ground for dissolution of marriage is on a finding that the marriage is irretrievably broken. One basis on which to find the marriage to be irretrievably broken is to find that the conduct of one party is such that the other cannot reasonably be expected to live with that party. With the abolishment of the defense of insanity, conduct resulting from mental illness may suffice to make it unreasonable for a spouse to live with that party. Thus the fact that Loleta's conduct resulted from her mental illness does not deprive the court of the power to find that such conduct made it unreasonable for Forest to live with her.

There was substantial evidence to support the court's finding that the marriage was irretrievably broken as demonstrated above. The court properly construed Loleta's cross petition as a request under § 452.305.2 that a legal separation rather than a dissolution of marriage decree be granted.

■■■ Loleta contends that the court erred in failing to grant her a decree of separate maintenance under § 452.130. Loleta con-

tends the evidence proved that Forest had abandoned her. As set out above, the evidence did not show Forest had abandoned Loleta and the court so found. Absent substantial evidence to prove an abandonment, Loleta was not entitled to separate maintenance.

■ Loleta argues that the court erred in failing to award her the full amount of attorney fees which was sought. The court awarded $3,034.56 for attorney fees, but Loleta's attorney testified that a reasonable fee would be $7,634. The trial court is vested with a broad discretion in awarding attorney fees and only when an abuse of discretion is shown will this court overturn such award. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919[7] (Mo. banc 1979). In this case, a substantial amount of the time devoted to this case was by a young attorney just six months out of law school. The trial court could have found that the time of this attorney was not worth the same amount as Loleta's main attorney who was experienced. No abuse of discretion is shown.

■ Loleta next contends that the court erred in making an equal division of the marital property. The real estate, which was the bulk of the marital property, was ordered to be sold and the net proceeds divided equally. The principal complaint is that Forest was not entitled to an equal division because of his admitted adultery. However, adultery will not deprive him of his right to share equitably in the marital property, particularly in a marriage of long duration. *In Re Marriage of Schulte*, 546 S.W.2d 41, 48[7] (Mo.App.1977). Further, the trial court is also vested with a considerable amount of discretion in dividing marital property. *Nilges v. Nilges*, 610 S.W.2d 58, 60[4–5] (Mo.App.1980). There was no abuse of discretion in the division of the marital property.

Loleta finally contends that the court erred in failing to place a value on the pension which was vested in Forest. This pension was through a union through which Forest had been employed in the construction industry for 29 years. The only evidence on the value of the pension was that if Forest were to start drawing it at the time of trial, he would receive $145 per month. The court found the pension would yield that amount in its decree, and further ordered that the pension be set apart to Forest. There was no other evidence from which the court could have found a value to attribute to the pension. The court did not err in failing to find some other value.

The judgment is affirmed, but the trial court is ordered to modify such judgment by deleting "each party has behaved in such a way at a time when each was competent to do otherwise that the other party cannot be expected to live with him and that, therefore, the marriage cannot be preserved and is irretrievably broken." The court is ordered to substitute a finding that Loleta has denied under oath that the marriage is irretrievably broken, but Loleta has behaved in such a way that Forest cannot reasonably be expected to live with her, and, therefore, the marriage is irretrievably broken.

As modified, the judgment is affirmed.

All concur.