In re the MARRIAGE OF Stephen C. BRADFORD, Petitioner-Respondent,

and

Carolynn C. Bradford, Respondent-Appellant.

No. 10413.

Missouri Court of Appeals, Springfield District.

Oct. 25, 1977.

Raymond H. Vogel, Vogel, Frye & O'Loughlin, Cape Girardeau, for respondent-appellant.

Arthur T. Stephenson, Caruthersville, for petitioner-respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

In this dissolution of marriage action, respondent Carolynn C. Bradford appeals from the refusal of the trial court to set aside the provisions of a default decree apportioning marital property and awarding custody of the parties' minor child.

Petitioner and respondent were married February 7, 1970, at Hammond, in Tangipahoa Parish, Louisiana. They separated on August 23, 1975. On August 25 this action was commenced in the Circuit Court of Pemiscot County. On the same day, respondent instituted an action for separation from bed and board in the District Court for Tangipahoa Parish, in Louisiana. Both courts have rendered judgments.

In the Missouri action, the respondent was personally served outside the state. At our request, the Clerk of the Circuit Court of Pemiscot County has furnished us a copy of the summons. We shall comment further concerning the sufficiency of service. The Missouri summons was served on September 12, 1975. There is no record indication that the petitioner was ever served by the Louisiana court, but on October 8, 1975, that court entered a judgment in favor of the respondent: (a) decreeing a separation from bed and board; (b) awarding the care and custody of the parties' minor child to

respondent, and (c) dissolving the community of acquests and gains existing between the parties.[1]

No responsive pleading whatever was filed in the Missouri proceeding. On April 6, 1976, at the petitioner's request and after notice to the respondent, the cause was called for hearing. For the first time, counsel appeared for the respondent. He advised the court that no pleading or motion had been filed in the Missouri proceeding because (1) the venue of the action was improperly laid, and (2) respondent's Louisiana attorney had been led to believe that the effect of § 452.320, para. 1, RSMo Supp. 1975,[2] was to provide for a first, interlocutory hearing of which respondent would receive notice and that upon being notified, respondent could then file pleadings and frame issues concerning the apportionment of marital property and the custody of the child. Counsel asked for a hearing on the question of venue and for a continuance; both requests were denied; a hearing was held upon the petition for dissolution. The evidence heard need not be set forth in detail at this point. At the conclusion of the hearing, the Circuit Court of Pemiscot County entered a judgment reciting petitioner's appearance in person, respondent's appearance for the purpose of contesting venue and jurisdiction and for the purpose of requesting a continuance. The court further found that the petitioner had been a resident of this state for more than 90 days; that more than 30 days had elapsed since the respondent was served and respondent was in default. The court found the marriage to be irretrievably broken and

that one child was born of the marriage. The child was found to be in respondent's custody. The court also found that the respondent was not pregnant. It was accordingly ordered and decreed: (1) that the marriage be dissolved; (2) that custody of the parties' minor child be awarded to the respondent for ten months each year and that petitioner have custody for two months each summer. Petitioner was ordered to pay respondent the sum of $100 per month during the time respondent had custody of the child. The trial court also made a general order apportioning the marital property. The notice provided for in § 452.320, para. 1, RSMo Supp. 1975 was ordered mailed.

Respondent filed two after-trial motions. The first of these motions was filed April 16, and was styled "Objection to Entry of Order of Dissolution of Marriage." The second motion was filed May 4 and was entitled "Motion to Set Aside Judgment." The assignments of error are much the same in both motions. Condensed and summarized, the allegations of error in both motions were: (1) that the venue of the action was improperly laid because the parties' marital domicile was in Cole County, not Pemiscot County; (2) that the Circuit Court of Pemiscot County was without jurisdiction because the Louisiana court had jurisdiction of the respondent and had entered a decree prior to April 6; (3) that the respondent would have appeared and filed pleadings but for her counsel's mistake of law; (4) that the trial court granted relief in excess of that prayed in the petition; (5) that respondent had a good defense because

1. This judgment was proved by a copy thereof authenticated as required by 28 U.S.C. § 1738 (1960) and § 490.130, RSMo (1969).

2. § 452.320, para. 1, in effect when this case was tried, read (emphasis added): "[I]f both of the parties by petition or otherwise have stated under oath . . . that the marriage is irretrievably broken, or one of the parties has so stated and the other has not denied it, the court, after considering the aforesaid petition or statement, and after a hearing thereon shall make a finding whether or not the marriage is irretrievably broken, *and where one of the parties has not denied it the court shall cause to be*

*deposited in the United States mail an envelope, certified or registered, deliver to addressee only, return receipt requested, and with postage prepaid, enclosing a notice to the party not denying that absent objection . . . being filed within ten days after date of mailing . . . an order of dissolution of marriage may be entered of record. The failure of such party to receive such notice shall not impair the power of the court to enter an order dissolving the marriage or the validity of such an order . . . ."* The ten-day notice requirement was repealed by the Seventy-ninth General Assembly, Laws of Mo. 1977, Act 30.

petitioner had substantial property and earnings not disclosed to the trial court. A hearing was held on both motions on June 15, 1976. The respondent offered two affidavits and an authenticated copy of the Louisiana judgment in evidence, and some testimony was heard. On June 18, the trial court denied respondent's motion and this appeal followed.

A word concerning the posture of the cause on appeal seems appropriate. The motion filed April 16, 1976, seems to have been intended as a petition for review as authorized by Rule 74.15.[3] We assume the second motion was filed because such a petition does not lie if the defendant has been personally served with process. *Zbryk v. B. F. Goodrich Company,* 344 S.W.2d 138, 140[1] (Mo.App.1961). Whatever counsel's reasons for filing the second, duplicative motion, we might regard the first motion as a motion for new trial, *Gorzel v. Orlamander,* 352 S.W.2d 675, 677–678 (Mo.1962), but as just noted, the "Motion to Set Aside" duplicates and to some extent expands the allegations of error set out in the first motion, and sets up both matters which appear on the face of the record and matters dehors the record as grounds to set aside the default. We are aware that there is a distinction between a motion to set aside a judgment for irregularity under Rule 74.32 and a motion in the nature of a writ of error coram nobis;[4] it is nevertheless possible to combine a motion to vacate for irregularity and a motion in the nature of a writ of error coram nobis and to present irregularities patent upon the record and error dehors the record in one proceeding. *Murray v. United Zinc Smelting Corp.,* 263 S.W.2d 351, 354 (Mo.1954); *Crabtree v. Aetna Life Ins. Co.,* 341 Mo. 1173, 1180–1181, 111 S.W.2d 103, 106[1–4] [5] (Mo. 1937). When such a combined motion is filed and proof is heard, the motion to set aside or to vacate constitutes a new and independent proceeding commenced by motion, and the order entered by the court is itself an appealable order. *In re Jackson's Will,* 291 S.W.2d 214, 219–220[6] [7, 8] (Mo. App.1956). We accordingly regard the ruling on the motion to set aside as the judgment appealed from.

The respondent's first assignment of error, as briefed, is that "the court erred in refusing to set aside the default judgment, because it is the policy of the court, especially in divorce or dissolution cases, that causes should be tried on their merits, where such setting aside would result in no detriment or prejudice." This point is not developed in the "Argument" part of the brief, and we will not pursue it as an abstraction. *Bopp v. Spainhower,* 519 S.W.2d 281, 286[7] (Mo. banc 1975); *State v. Schulten,* 529 S.W.2d 432, 434[4] (Mo.App.1975).

Another point, strenuously and repeatedly advanced by the respondent, is that the default should be set aside because the petitioner's Missouri counsel advised respondent's Louisiana attorney that under the provisions of § 452.320, para. 1, RSMo Supp. 1975, respondent would have ten days to file objections to any part. of the judgment with which she disagreed. The respondent assumes that counsel for the petitioner held an erroneous view of the law, and she is correct in that assumption. In *State ex rel. Nilges v. Rush,* 532 S.W.2d 857 (Mo.App. 1975), a mandamus action, the court pointed out that one purpose of the Uniform Marriage and Divorce Act, 9 U.L.A. §§ 301–316 (Master ed.1973) from which our Dissolution of Marriage Act, §§ 452.250–452.415 RSMo Supp. 1975, is taken, was to *abolish* interlocutory decrees in those states which have them, and suggested that in any event, the rules governing civil actions would prevail over apparently contradictory provisions in the Act because of the specific language of

**3.** Reference to statutes and rules are to RSMo (1969) and V.A.M.R. except where otherwise specifically noted.

**4.** See *Rook v. John F. Oliver Trucking Company,* 505 S.W.2d 157, 160 (Mo.App.1974); *Diek-*

*mann v. Associates Discount Corporation,* 410 S.W.2d 695, 700 [7, 8] (Mo.App.1966); Comment, Procedure—Setting Aside Final Judgments in Missouri, 28 Mo.L.Rev. 281, 286, 290 (1963).

§ 452.300(1), RSMo Supp. 1975.[5] See *State ex rel Nilges v. Rush, supra,* 532 S.W.2d at 859[1–3]. In *Brand v. Brand,* 534 S.W.2d 628, 631[3] (Mo.App.1976), the court went further and held that the ten-day notice was not jurisdictional and that a party's failure to receive such notice in no way attenuated the trial court's authority to enter an order of dissolution. Manifestly, petitioner's counsel had an erroneous view of the law, and there is no doubt that he communicated that view to the Louisiana attorney who represented the respondent.

 It is important in this case that respondent makes no allegation of fraud in the procurement of the judgment. Indeed, she carefully points out in her brief that she makes "no allegation" that Mr. Stephenson intentionally misled her Louisiana counsel. Neither is there any record indication that, as in *J. R. Watkins Company v. Hubbard,* 343 S.W.2d 189 (Mo.App.1961), and other cases cited by the respondent, petitioner's counsel obtained the default judgment in violation of an agreement not to do so; again, the record clearly shows the contrary is true. Further, although our Dissolution of Marriage Act is a species of "no fault" legislation, it is important to note that respondent made no showing of any meritorious defense to those parts of the judgment to which she now objects. There is a bare allegation that the petitioner "has substantial property and earnings which he did not disclose to the court," but respondent makes no attempt to demonstrate how the existence of such property or income renders the decree inequitable or essentially unfair. All our statutes require is a subjectively fair and equitable division of the marital property, *In re Marriage of Schulte,* 546 S.W.2d 41, 46 (Mo.App.1977) and authorities cited n. 6, and the respondent has alleged no fact or circumstance which would, if proved, affect the division of marital assets. Neither has she averred any factual matter which would necessitate a different award of custody of the minor child. The respondent has been granted custody of her child for ten months of the year; petitioner is to have him for two months each year; custody will alternate between parents on Thanksgiving and Christmas. There is no suggestion that the petitioner is unable to care for his child or that he is an unfit custodian. It is a familiar principle that when both parents are fit custodians, a child's best interests are usually served by association with both parents. *Asbell v. Asbell,* 430 S.W.2d 436, 438[6] (Mo.App. 1968); *Graham v. Graham,* 428 S.W.2d 941, 944–945[4] (Mo.App.1968). In short, it is neither alleged nor indicated that the default judgment was the product of misrepresentation nor that the respondent has any meritorious defense to present. On the record before us counsel's negligence is imputable to the respondent, and Mr. Stephenson's erroneous representations of the law of Missouri furnish no ground for vacating the default judgment. *In re Marriage of Hanners,* 549 S.W.2d 941, 942[2] (Mo.App. 1977); *Fulton v. International Telephone & Telegraph Corp.,* 528 S.W.2d 466, 469[3] (Mo.App.1975); *Askew v. Brown,* 450 S.W.2d 446, 450[2–5] (Mo.App.1970).

The respondent's contention that the Circuit Court of Pemiscot County was without jurisdiction deserves serious consideration, even though it is confusingly presented. As briefed, respondent's point is that the Louisiana decree "takes precedence" over the Missouri judgment because the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, cl. 1, and implementing legislation, 28 U.S.C. § 1738 (1960), require this court to recognize and regard the Louisiana decree as conclusive. The force of this contention is considerably diminished by the respondent's concession that the Missouri decree is effective to dissolve the marriage. We are in doubt that the respondent may concede the validity of the order of dissolution, seek further relief in the Missouri court and simultaneously deny the Missouri court's right to act, *Germanese v. Champlin,* 540 S.W.2d 109, 112[8] (Mo.App.1976); *Brand v. Brand, supra,* 534

5. Which provides that: "[t]he rules of the supreme court and applicable court rules apply to all proceedings under [the Dissolution of Marriage Act]" . . .

S.W.2d at 631[3], but in the circumstances we prefer to consider the respondent's point on its merits.

■ The respondent has cited us to *Urbanek v. Urbanek,* 503 S.W.2d 434 (Mo.App. 1973) and *McDougal v. McDougal,* 279 S.W.2d 731 (Mo.App.1955). In *Urbanek v. Urbanek, supra,* the court had to consider an appeal from an order of the Madison County Circuit Court dismissing the plaintiff wife's petition for a divorce. The court held, inter alia, that notwithstanding the fact that plaintiff filed her action in Missouri prior to the time her husband filed an action for divorce in Mississippi, the Full Faith and Credit Clause of the United States Constitution compelled the Missouri court to recognize the foreign decree as it related to the termination of the marriage, and that the foreign decree was conclusive as to all matters except the jurisdictional facts. The Mississippi decree recited a finding of jurisdictional fact and further recited a *"full, complete and absolute divorce"* (our emphasis) to the defendant husband. The court observed, 503 S.W.2d at 439–440, there was no evidence that the defendant husband was not a bona fide domiciliary of the State of Mississippi, the Mississippi decree was presumptively valid, and must be given full faith and credit in Missouri. We take the case to stand for the proposition that the doctrine of preemptive jurisdiction will not apply to defeat a valid decree of divorce when the actions are filed in different states. *Urbanek v. Urbanek, supra,* 503 S.W.2d at 440, n. 5. *McDougal v. McDougal, supra,* 279 S.W.2d 731, is material here only insofar as it holds that a foreign judgment rendered by a court of general jurisdiction is presumed, absent any showing to the contrary, to be valid. *McDougal v. McDougal, supra,* 279 S.W.2d at 739–740.

■ Neither of the precedents cited aids the respondent here. The Louisiana decree, as noted, recites on its face that it is a decree of separation from bed and board. The pleadings in this case clearly show that the law of Louisiana is relied on, and in consequence we are required to take judicial notice of the law of that state to determine the effect of the decree. Rule 55.-21(b); *Valleroy v. Southern Railway Company,* 403 S.W.2d 553, 555[1, 2] (Mo.1966). The Louisiana statutes which we have examined clearly indicate that a decree of separation from bed and board is an *interlocutory* decree. Of particular interest is the first paragraph of La.R.S. 9:302 (1960) (our emphasis): [6]

> *When there has been no reconciliation between the spouses for a period of one year or more from the date the judgment of separation from bed and board become* [sic] *final,* the spouse who obtained this judgment may sue for and obtain a judgment of absolute divorce. If no such divorce action is instituted within a year and sixty days from the date the judgment of separation from bed and board became final, the other spouse may sue for and obtain a judgment of absolute divorce.

■ This statute and its predecessors were construed in *Fulmer v. Fulmer, supra,* n. 4, 301 So.2d 622, for the immediate purpose of determining whether "fault" as adjudicated in a separation hearing was res judicata in subsequent divorce proceedings upon the issue of a wife's fault, or freedom from it, which under Louisiana law determines the wife's post-divorce right to alimony. Without going into detail, we may say that the opinion indicates there are a number of issues which are *not* finally determined in a separation proceeding, and those issues may, in some instances, be re-litigated in the final divorce action. *Fulmer v. Fulmer, supra,* 301 So.2d at 625, 629[2, 3][5][6]. See also *Moon v. Moon,* 345 So.2d 168, 172–173[2][3] (La.App.1977).

■ The point of our discussion is this: The great weight of authority is that a judgment rendered in one state is entitled to full faith and credit only if it is a final judgment, not subject to modification in the state in which it was rendered. Interlocutory decrees are not entitled to full faith and credit under the provisions of U.S.

6. The statute is quoted marginally in *Fulmer v. Fulmer,* 301 So.2d 622, 626, n. 4 (La.1974).

Const. art. IV, § 1, cl. 1, and implementing legislation. *White v. White*, 78 Ariz. 397, 281 P.2d 111, 113[3, 4][5, 6] (1955); *Hendrix v. Hendrix*, 160 Conn. 98, 273 A.2d 890, 893[1] (1970); *Morris v. Morris*, 197 N.W.2d 357, 359[4] (Iowa 1972); *Iverson v. Iverson*, 42 Misc.2d 338, 247 N.Y.2d 960, 965–966[3] (1964); 27B C.J.S. Divorce § 331 (1959).[7] The statute quoted shows that a Louisiana decree of separation from bed and board is only an interlocutory decree; such a decree does not really destroy the marital relationship nor necessarily determine the issue of "fault" as it bears on the wife's right to alimony. We note further that the Louisiana judgment recites on its face that the petitioner was not before the court when the judgment was rendered. We conclude that we are not required to recognize the Louisiana decree as a bar to the Missouri judgment, and we decline to do so. See R. Leflar, American Conflicts Law, § 231, pp. 558–559 (1968) [hereinafter cited as *Leflar*].

In briefing a further claim of error, the respondent chooses to regard the Missouri judgment as valid, and asserts that the judgment is improper and should be set aside for the following reasons: (1) the judgment goes beyond the pleadings; (2) the trial court failed to apportion the marital property in just proportion, and (3) the evidence is insufficient to support the order apportioning the marital property. Intermixed generally with these assertions are respondent's claims that: (a) the venue of the action was improper, and (b) the trial court did not have jurisdiction of the respondent's person.

These hodgepodge assertions of error have little merit in this particular case. At the time the default hearing was had on April 6, 1976, the petitioner testified that his "present address" was Jefferson City, Missouri; that he was then Director of Planning in the Missouri Office of Administration, and that he had been a resident of Missouri "all [his] life." Further, petition-

er's evidence was that he had resided in Missouri for more than 90 days prior to the time his petition was filed, and as counsel pointed out, the petition had been filed nearly seven months before the hearing.

According to petitioner's evidence, he lived in Jefferson City, Missouri, when the action was commenced. Respondent left home on August 23, 1975. The parties had been living in Jefferson City for some time and were "buying a home" there. Petitioner was "born and raised" in Pemiscot County, and he and respondent had consistently voted in Pemiscot County. The parties presumably had paid taxes in Pemiscot County and petitioner believed and considered himself to be a resident of that county. While the petitioner was gone "for a weekend" respondent "apparently" left Jefferson City and went to Louisiana. Hammond, Louisiana, was where the respondent was "born and raised."

The petitioner testified that respondent took "several items" of personal property with her to Louisiana. Contrary to respondent's assertion that no proof of the value of the property was made, the petitioner had "notes" concerning the value of the personal property and the trial court ordered those notes marked as an exhibit and further ordered that they be put in evidence. Petitioner estimated that the respondent had taken property worth approximately $29,000 with her, and she had left items worth approximately $15,425. Respondent also had refused to allow the petitioner to return the child to Missouri for a visit at Christmas. Petitioner testified that he believed his marriage was beyond retrieval.

There was some testimony concerning the petitioner's ability to make payments to support his child. The petitioner earned about $14,500 annually; he estimated his wife's independent worth at $300,000 or more. During the marriage, respondent re-

7. We are aware that there is a corollary principle, mentioned in *Hendrix v. Hendrix*, supra, 160 Conn. 98, 273 A.2d at 893, which might require us to give the Louisiana judgment the same effect here as it has in Louisiana, if en- forcement of the Louisiana judgment was sought here. That is not the respondent's position; all she asks is that we recognize the Louisiana judgment as a bar to this action.

ceived an annual income of about $3,000 which she spent as discretionary income.

Petitioner further testified that the "down payment" on the parties' Jefferson City property represented a gift made by the respondent's mother to both parties, and that thereafter he made "all of [the] payments" on the property, described as a house located at 2803 Sue Drive in Jefferson City. Other marital property included a joint savings account in the amount of $14,800 in the National Bank of Caruthersville, against which there was a claim for $8,600, and a farm near Holland, in Pemiscot County. The trial court apportioned the marital property as follows: The farm property in Pemiscot County and the residence of the parties in Jefferson City was awarded to petitioner, petitioner to pay the indebtedness thereon; the joint savings account was divided equally between the parties, and the respondent was awarded all personal property in her possession, which the trial court found to be of a reasonable value of $29,000. Custody of the child was divided as indicated.

To dispose of the respondent's persistent assertion that the venue of the action was improperly laid, we may say we believe the record is sufficient to show that the petitioner "resided" in Pemiscot County and that Pemiscot County was in fact the parties' marital domicile. § 452.300(1) RSMo Supp. 1975 provides that dissolution proceedings be had in the county where the plaintiff resides. See *State ex rel. Adams v. Corrigan*, 538 S.W.2d 372 (Mo.App.1976). In our opinion, the word "resides" as used in § 452.300(1) is the equivalent to "is domiciled in." § 452.305, RSMo Supp. 1975, with one exception not material here, is taken from and is very similar to § 302 of the Uniform Marriage and Divorce Act, 9 U.L.A. at 479, and the Commissioners' note following § 303, 9 U.L.A. at 482, states that:

" . . . [R]esidence, of course, has the meaning 'domicile,' as this is made the basis of jurisdiction in Section 302(a)(1)[8] and the comment thereto."

The petitioner testified that he was reared in Pemiscot County and that he regarded that county as his home. As recent cases and modern authority point out, a person does not acquire a domicile different from his domicile of origin unless he removes to his new residence with the present intent to regard the new residence as a permanent home. *Gaffney v. Gaffney*, 528 S.W.2d 738, 741[4] (Mo. banc 1975); *Leflar*, § 10, p. 19. Petitioner's evidence tended to negate any present, fixed intention to regard Jefferson City, in Cole County, as a present home. In addition, it is recognized that participation in community affairs, such as voting, is evidence which demonstrates a sense of public responsibility and supports a finding of domicile in that community. See *Herrin v. Herrin*, 103 Mont. 469, 63 P.2d 137, 138–139[3] (1936); Note, Evidentiary Factors in the Determination of Domicile, 61 Harv.L. Rev. 1232, 1236 (1948). We bear in mind that the parties were purchasing a residence in Jefferson City at the time they separated, but in view of the parties' comparative wealth, the maintenance of a second residence does not necessarily negate a permanent "residence" or domicile in Pemiscot County. *In re Harkness' Estate*, 183 App.Div. 396, 170 N.Y.S. 1024, 1029–1030 (1918); Note, supra, 61 Harv.L.Rev. at 1235–1236. Again, the record supports a finding that the petitioner's marital domicile was in Pemiscot County and that the venue of the action was not in Cole County.

Two further, wholly inconsistent assignments of error must be considered. The respondent asserts that the Missouri court lacked personal jurisdiction and therefore could neither award custody of the child nor apportion the marital property. At the same time, she attacks the apportionment of marital property as being improper under the Dissolution of Marriage Act. Our principal concern is whether it can be said, under any tenable legal theory, that the Circuit Court of Pemiscot County acquired personal jurisdiction in this action.

**8.** Substantially our § 452.305(1)(1) RSMo Supp. 1975.

As we have said, we have personally examined the writ of summons which issued in this cause on August 25, 1976. The summons was prepared on Form 5, as promulgated by our Supreme Court. It is directed to the respondent. The return recites that the summons was served upon the respondent on September 12, 1975, in the Parish of Tangipahoa in the State of Louisiana, together with a copy of the petition. The return is sworn to by James Bennett, Deputy Sheriff of Tangipahoa Parish. Then follows the certificate required by Rule 54.-20(b)(1) which in terms states:

" . . . [T]here shall be attached to the affidavit the certificate of such judge or clerk as to the official character of the affiant and to his authority to serve process in civil actions within the state or territory where such service was made."

Form 5, promulgated by our Supreme Court, directs that the officer making the service shall swear to the affidavit of service before the judge or the clerk of which he is an officer. The directions printed on Form 5 plainly provide that a deputy clerk *may not* act in place of the clerk. Nevertheless, the certificate required by Rule 54.-20(b)(1) was executed by a deputy clerk. The service of process outside the state was manifestly deficient. The question then is, may it be said that personal jurisdiction of the respondent was conferred by consent or waiver? Rule 55.27 is substantially the same as Fed.R.Civ.P. 12(b–h); both deal with the presentation of defenses and objections, and we consider precedents construing Fed.R.Civ.P. 12(b–h) persuasive. Cf. *Lynch v. Webb City School District No. 92*, 418 S.W.2d 608, 617[15] (Mo.App.1967).

There is little doubt in our minds that the respondent had actual knowledge of the Missouri proceeding from and after September 12, 1975. Nevertheless, because the return was deficient, the service of process was not effective to confer personal jurisdiction of the respondent upon the Missouri court, and defendant did not waive the defense of lack of personal jurisdiction by failing to raise that defense by timely motion. *Wyrough & Loser, Inc., v. Pelmor Laboratories, Inc.*, 376 F.2d 543, 546, n. 4 (3d Cir. 1967); *Di Vecchio v. Gimbel Brothers*, 40 F.R.D. 311, 314 (W.D.Pa.1966). Respondent may, nevertheless, have submitted to the Missouri court's jurisdiction by consent or by waiver. *Zelson v. Thomforde*, 412 F.2d 56, 58–59, n. 8 (3d Cir. 1969).

The record shows that counsel for the respondent did appear on April 6, 1976. The court inquired directly of counsel's purpose; the judge asked if counsel's appearance was "for limited purposes attacking venue." Counsel answered affirmatively. The discussion then proceeded:

"[T]he Court: Appears for limited purpose of attacking venue, and perhaps jurisdiction?

Mr. Vogel: Yes, sir.

The Court: And makes oral application for what?

Mr. Vogel: I would like to have a hearing with regard to the matter of proper venue, Your Honor."

The trial court refused a hearing upon improper venue, and we find no specific objection made by counsel to personal jurisdiction of the respondent. After the oral motion contesting venue was made, counsel then moved for a continuance. This motion, or application was denied. The default judgment mentions an appearance for the purpose of contesting "jurisdiction", but in context the recital can only be taken as referring to the respondent's contention that neither party "resided" in Pemiscot County. We reiterate that we find no specific objection to personal jurisdiction in the prehearing procedure.

Here, therefore, we have a situation in which the 55.27(a) defense of improper venue was properly raised by oral motion; however, the defense of lack of personal jurisdiction was not presented nor mentioned, and by the specific language of Rule 55.27(g)(1)(B) must be considered waived. *Zelson v. Thomforde*, supra, 412 F.2d at 58, 59[2, 3][4]; *Bremier v. Volkswagen of*

*America, Inc.*, 340 F.Supp. 949, 951[2] (D.D. C.1972).[9]

We turn to the respondent's contention that the judgment goes beyond the pleadings because the petition makes no mention of a division of property nor an award of custody, nor does the prayer of the petition ask for any division of the marital property or for child support. We find no merit in this argument. To the extent it has jurisdiction to divide marital property—and here personal jurisdiction was conferred upon the trial court by waiver—a trial court *must* specifically decree a division of marital property upon dissolution of a marriage. *L.F.H. v. R.L.H.*, 543 S.W.2d 520, 522 (Mo.App.1976); *Pendleton v. Pendleton*, 532 S.W.2d 905, 906[3] (Mo. App.1976). This case is unlike *Blessing v. Blessing*, 539 S.W.2d 699 (Mo.App.1976), which appears to support the respondent's position but is, we believe, confined to its facts. This case was not commenced before the enactment of the Dissolution of Marriage Act; unlike *Blessing*, evidence was presented here which would, under the rules, amend the petition to conform to the proof, and despite the respondent's protestations, it is clear that she understood there would be a division of marital property in the Missouri proceeding. In fact, such proof as there is in the record indicates that the petitioner's attorney and respondent's attorney were still "negotiating" a division of marital property "as late as Sunday or Monday [April 4 and 5, 1976]" before the default hearing on Wednesday, April 6, 1976. We believe, and hold that the trial court properly undertook to apportion the marital property.

A further objection is that the trial court failed to apportion the marital property in just proportion and that the evidence is insufficient to support the Missouri judgment to the extent that the decree appor-

tions marital property. These complaints are made without citation of authority—only the statute, § 452.330, RSMo Supp. 1975 is cited—and we decline to consider them.

We also consider respondent's claim of error in awarding custody of the parties' minor child to be without merit. The only objection made to the award of custody is that the Missouri court was without personal jurisdiction of the respondent. As we have noted, the Missouri court acquired personal jurisdiction by waiver. Enforcement of the award of custody may be another matter, but the award is not subject to the objection made here.

Finally, to put the appeal in perspective, we may say we realize that default decrees are not generally favored in divorce cases; the state is said to have an interest in protecting the marriage contract and the welfare of the parties. See, *e. g., Hawkins v. Hawkins*, 462 S.W.2d 818 821[1] (Mo.App.1971); *Rogers v. Rogers*, 399 S.W.2d 606, 611–612[6] (Mo.App.1966). The precedents so holding, however, are of minimal application here, where the only apparent interest of either party lies in obtaining a greater share of the marital property. Having engaged, for whatever reason, in an interstate stand-off for several months, respondent now asks reversal because her counsel relied on *opposing* counsel's tentative view of the law. The real question of merit is whether the respondent was unreasonably denied access to the courts of this state. Upon review of the whole record, we conclude she was not. Accordingly, the judgment is in all respects affirmed.

FLANIGAN, J., concurs in result.

BILLINGS, C. J., disqualified.

---

9. We note it is now suggested, and sometimes held, that any defense which may be raised by motion under Rule 55.27(a) (except lack of subject-matter jurisdiction and failure to state a claim or defense) is waived by failure to object by timely motion or pleading, if the party has fair, actual notice of the pending action. 5 C. Wright & A. Miller, § 1391, p. 857–858 (1969), and see *Aiken v. Bynum*, 128 Ga.App. 212, 196 S.E.2d 180, 181[4] (1973). If the language of Rule 55.27 is taken literally, respondent has waived improper venue and want of personal jurisdiction.