Leeta Ruth **BURCHETT** (Huisenga),
**Appellant-Respondent,**

v.

Billie Gene **BURCHETT,**
**Respondent-Appellant.**

Billie Gene **BURCHETT,**
**Respondent-Appellant,**

v.

Leeta Ruth **BURCHETT** (Huisenga),
**Appellant-Respondent.**

Nos. KCD 29509, 29526.

Missouri Court of Appeals,
Kansas City District.

Oct. 2, 1978.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent-appellant.

Jack A. Lewis, Chancellor & Lewis, North Kansas City, for appellant-respondent.

Before SHANGLER, P. J., and SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

These appeals are from a judgment which vacated a prior default judgment to modify a custody award. The order of modification rested on service by publication which issued on the affidavit of the husband that the wife was not amenable to personal service within the state because she had absented herself from her usual place of abode and her address was otherwise unknown to him. The judgment by default was vacated on the motion of the wife, understood by the court as a writ of coram nobis, and rests on the determination that the husband made no such diligent effort to locate and notify the wife of the pending action. The judgment also awards tempo-

rary custody of the children to the father pending adjudication of a separate motion to change custody and also orders the husband to pay the wife attorney fees and suit money incidental to the proceeding to vacate the default judgment.

The wife appeals from the judgment which grants the husband temporary custody of the children. The husband cross-appeals from the vacation of the prior judgment and from the order for payment of attorney fees.

The husband contests the vacation of the default judgment on the premise that a proceeding to modify custody merely exercises the continued jurisdiction the court acquired over the parties and the res by virtue of the original decree. He argues that the wife engaged that jurisdiction by her petition for divorce some years earlier and, by his perceptions, "the court has at all times had personal jurisdiction over her." This contention suggests that the formal statutory mode of service of process was superfluous to submit the wife to the judgment of the court and so, in any event, whatever insufficiency attended the publication notice could not affect the validity of the adjudication entered.

▇ It is properly stated that a final judgment in divorce or dissolution of marriage does not divest a court of continued jurisdiction to modify that decree as to maintenance, support or custody. Sections 452.370 and 452.410, RSMo Supp. 1974; *Greene v. Greene,* 368 S.W.2d 426, 428[1] (Mo.1963). The jurisdiction retained by the court which renders a domestic relations decree, however, although exclusive as to such matters, operates only on changed circumstances. *Hayes v. Hayes,* 363 Mo. 583, 252 S.W.2d 323, 328[4] (1952). A motion to modify a decree of custody, therefore, adjudicates new rights on new evidence and results in a new judgment from which a party aggrieved may appeal. *Olson v. Olson,* 184 S.W.2d 768, 772[4, 5] (Mo.App.

1945); *North v. North,* 339 Mo. 1226, 100 S.W.2d 582, 587[13–15] (1936). Thus, although a motion to modify a decree of custody continues from the original action, such a petition constitutes an independent proceeding so that notice to the party to be adversely affected is indispensible to valid judgment. *Greene v. Greene, supra,* l.c. 428[1–7]; *Williamson v. Williamson,* 331 S.W.2d 140, 142[1–2] (Mo.App.1960); In re Lipschitz, 466 S.W.2d 183, 185[1–3] (Mo. App.1971); *Burgess v. Burgess,* 239 Mo. App. 390, 190 S.W.2d 282, 284[1, 2] (1945).

▇ The husband contends that only two days before the action was brought he personally told the wife he intended then to initiate proceedings to modify the custody award as to the children [whom he had taken into possession] so there was no duty for him to give further notice of what she already knew. Legal notice of the commencement of suit, however, means more than actual notice of the event. *In re Marriage of Bradford,* 557 S.W.2d 720, 729[16] (Mo.App.1977). Rather, the law requires that a party subject to adverse judgment shall be formally served by an officer of the court with process and statement of the claim [except for in cases of publication] and that formal proof of service be made part of the record of the proceedings. Rule 54. This ceremony accomplishes the purposes both of due process for notice and of the statute that the fact of notice shall not be subject to dispute. *Williamson v. Williamson,* 331 S.W.2d 140, 144[6] (Mo.App. 1960); *Miners' Bank v. Kingston,* 204 Mo. 687, 103 S.W. 27, 31 (1907).

▇ The law treats a motion to modify a domestic relations decree not as an original action, however, but as a subsequent pleading within the terms of Rule 43.01(a) and predecessor § 506.100 so that summons in the usual form need not issue or be served. *In re Lipschitz,* 466 S.W.2d 183, 185[1–3] (Mo.App.1971).[1] A reasonable no-

1. This rule, as we have noted, rests on the ostensible rationale that a motion to modify a custody award is not an original action, but merely continues the initial proceeding. *Hayes*

*v. Hayes, supra,* 252 S.W.2d, l.c. 327[4–7]; *North v. North, supra,* 100 S.W.2d, l.c. 587[13–15]; *Burgess v. Burgess, supra,* 190 S.W.2d, l.c. 284; In re Lipschitz, *supra,* l.c. 185. This rule,

tice sufficient to meet the requirements of due process nevertheless must be given to the party adversely affected—and on this issue the proponent of the motion has the burden to prove that the pleading and the time for hearing were imparted to the adversary. *Greene v. Greene,* 368 S.W.2d 426, 428[8, 9] (Mo.1963). And where the notice is attempted upon an attorney in the cause, the burden falls on the proponent to show that the relationship of attorney and client subsisted at the time of service. *Burgess v. Burgess, supra,* 190 S.W.2d, l.c. 284[3–4]. In this case, one notice was attempted by service of the motion papers upon Hammett, counsel for the wife at the original proceedings, but his affidavit disclaimed that he still represented her. The subsequent word of mouth that the father would seek modification of the custody award imparted to the wife some two days before institution of proceedings was equally ineffective as the legal notice expected by due process. *Burgess v. Burgess, supra,* l.c. 284[3–4]; *Greene v. Greene, supra,* l.c. 428; *In re Marriage of Bradford, supra,* l.c. 729[16]. The validity of the judgment rests, if at all, on the notice imparted by the service by publication ordered by the court under Rule 54.17 on the affidavit of the husband that the wife was not amenable to service within the state.

A judgment for the custody of children acts in rem, or at least quasi in rem, and may issue on service of process by publication. Rules 54.12 and 54.17; *In re Marriage of Breen,* 560 S.W.2d 358, 361[1, 2] (Mo.App.1977). Where the children are physically before the forum their custody status is a res within the power of the court to adjudicate. *Kennedy v. Carman,* 471 S.W.2d 275, 288[4] (Mo.App.1971). The judgment by default which modified the custody of the children to the father, therefore, was presumptively valid. The action

by the wife to set aside that judgment— treated by the court as a proceeding in coram nobis—contends however, that the representations by the husband to induce service by publication that the wife could not be personally served within Missouri and that her address was unknown to him were untrue. The pleading contends, rather, that the husband was well aware of her presence or could have readily determined it for purpose of service.

The writ of error coram nobis was a remedy at common law to vacate a judgment which rested on a fact material to a valid adjudication, but erroneously assumed, and which if known, would have prevented jurisdiction to render the judgment. The formal writ has given way in our procedure to a simple motion to examine and correct, by evidence dehors the record, some error of fact upon which the adjudication rests. *Cross v. Gould,* 131 Mo. App. 585, 110 S.W. 672, 676 (1908); *Crabtree v. Aetna Life Ins. Co.,* 341 Mo. 1173, 111 S.W.2d 103, 106[1–4] (1937). The remedy redresses a defect of jurisdiction, either from improper service or notice not of record, or from other "want of adherence to some prescribed rule or mode of proceeding" which denies a party a right. *Casper v. Lee,* 362 Mo. 927, 245 S.W.2d 132, 138 (Banc 1952); *In re Jackson's Will,* 291 S.W.2d 214, 222[9–12] (Mo.App.1956). Accordingly, coram nobis will vacate a judgment on service by publication where the nonresidency of the defendant was proved by a false return—that "defendant cannot be found in the city" when in fact he was resident there. *State ex rel. Hudson v. Heinrich,* 14 Mo.App. 146 (1883).

The motion of the wife asserts a composite question of fact unknown to the court at rendition of judgment which, if proven, defeated the power of the court to proceed: that the actual knowledge of the husband

however, neglects the other postulate of these cases that the distinctive motion to modify is also an *independent proceeding* in which new rights based on new evidence are adjudicated. In short, these authorities fail to confront the express requirement of Rule 43.01(a) and predecessor § 506.100 that no service of a

pleading subsequent to the original petition need be made on a party in default "except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service [of] summons."

of her address or his failure at honest effort to determine it bely the affidavit upon which the service by publication issued and resulted in failure of the process indispensible to valid judgment. The motion to set aside the judgment was sustained on the determination by the court that the husband was not diligent to find the wife as to justify publication or satisfy due process. The husband on this appeal contends the evidence shows his diligence sufficient to sustain the default judgment and shows also the lack of diligence of the wife to act on her actual knowledge of the impending proceeding so as to defeat her motion to vacate that judgment.

The evidence shows that in March of 1973, the marriage between them was dissolved and the custody of the two children, one boy and one girl, was awarded to the wife. The wife and children removed from Kansas City to Springfield, Missouri. During the next two years they used ten different residences and the children attended seven different schools. On March 20, 1975, the husband brought the action to modify custody which was eventually rendered by default. The events which preceded that litigation—as well as the ambulations of the wife as they bear on the issue of known presence within Missouri for the purpose of service—are best described by this calendar:

*March 9, 1975:*
The wife and children are in residence at the Trails End Motel on Kearney Street in Springfield. The wife is listed in the telephone directory at that address. She is then employed at Johnson's Economy Inn as a bartender. On that date she leaves for Oklahoma City to be married, but loses heart and later returns. She leaves the children for the week in the care of a friend, Mary Maddox, as babysitter. While in Oklahoma City, the wife finds an apartment and a new employment.

*March 11, 1975:*
Mary Maddox calls the wife in Oklahoma City to inform her that a juvenile officer has been summoned to inquire into the status of the children. The wife learns the husband is in Springfield with the children at the motel and speaks to him by telephone. The husband tells her he intends to return to Kansas City with the children and she persuades him to defer until she returns that Friday.

*March 14, 1975:*
On that Friday, the husband removes the children to Kansas City. That evening, the wife returns to Springfield and finds the children gone. She moves in with Rita Strops on Missouri Street in Springfield where she remains until the end of the month, and after a sojourn at the parental residence in Trenton, moves into a residence on South Franklin in Springfield which she then occupies with her present husband [Huisenga].

*March 18, 1975:*
The wife goes to the home of the husband in Kansas City to claim the children but he will not relinquish them and tells her, rather, that he intends to bring an action for custody. During this visit, the wife tells the children [by the testimony of the son] that she continues to be employed at Johnson's Economy Inn. The wife on this visit gives the children the Strops address as her own [according to her testimony] and [according to the children] the wife gives them a St. Louis Street motel address as her temporary residence and [according to the son] that child transmits this address information to the father within two days. [The husband denies this communication.] The husband makes no inquiry of the wife as to her current address and acknowledges he "really doesn't care."

*March 20, 1975:*
The husband files the motion to modify custody of the two children and service of the action is attempted upon Attorney Hammett, counsel of record for the wife in the 1973 divorce proceeding.

*March 21, 1975:*
Attorney Hammett tries without success to locate the wife.

*April 1, 1975:*
The wife [at this approximate date] moves into the South Franklin Street res-

idence and is joined there later by her prospective husband [Huisenga] whom she marries on June 21, 1975.

*April 22, 1975:*

Attorney Hammett files affidavit in the cause which asserts unsuccessful effort to notify the wife of the action and which disclaims authority to accept service for the wife. He informs counsel for husband of these matters and that he does not represent the wife. Attorney Whitaker for the husband mails copies of the motion and notice to wife at the Kearney Street, Springfield, address and to the Oklahoma City address. Both were returned. The first, because the addressee moved leaving no address, and the second, because the address was unknown.

*April 25, 1975:*

The order of publication is issued.

*June 21, 1975:*

The wife remarries.

*June 25, 1975:*

The motion to modify custody to the husband was heard and granted by default. Attorney Hammett appears personally to observe, not as counsel for the wife.

*June 27, 1975:*

A copy of the order of modification of custody is mailed to the wife at the Kearney Street, Springfield, address and to the parents of the wife at Trenton, Missouri, but without street and number designations. The first is returned to the sender because the addressee left no forwarding order and the second, because the address was incomplete.

*September 9, 1976:*

The wife brings the action to set aside the default judgment of modification of custody.

These events are without essential dispute. How they bear on the knowledge of the husband as to the presence of the wife at any given time between commencement of the action to modify custody and the entry of default judgment, however, is a matter of disagreement and confusion. The evidence of the wife suggests that the lack of diligence of the husband is shown by three circumstances: First, that despite knowledge that the wife continued to be employed at the Johnson Economy Inn in Springfield, he attempted no personal service there nor inquiry of her true address. Second, that her telephone was listed for the Kearney Street address in Springfield and then at Franklin Street so that, presumably, her successive listing would have been disclosed by a call to the Kearney Street number. Third, that the wife had given a St. Louis Street address in Springfield to the children while in Kansas City [only two days before the custody action was brought] which was transmitted to the father by the son, but to which he gave no heed. The wife contends that an honest effort by the husband to act on any of this information would have disclosed her presence for personal service and notice of the motion.

The evidence of the wife self-contradicts each of these contentions. The first of them, that a proper diligence required the husband to attempt service upon her at the Johnson Economy Inn, or at least attempt to learn her residence from that source, rests on the telephone conversation on Tuesday, March 11th, between the wife in Oklahoma City and the husband at the Kearney Street trailer court residence the wife most recently maintained. He was there to retrieve the children. There is no doubt the husband knew that while last in Springfield the wife was employed at the Inn. The wife contends, however, that during that telephone conversation from Oklahoma City she informed the husband that she continued to be employed at the Inn and therefore his failure to make inquiry there failed his duty of diligence. The testimony of the wife herself belies this contention. The wife had gone to Oklahoma City to marry and to live. Her fiance was transferred there to a new employment and they were to establish residence there. That is what she had the children understand, as well as babysitter Mary Maddox, and that is what the husband learned. At the very time of her conversation with the husband [wherein she contends she contin-

ued employment at the Inn in Springfield] she had found new employment in Oklahoma City, and the very day after, she engaged a new residence. Thus, by her own admissions and conduct the wife meant Oklahoma City as a permanent change of locus to which she intended to call her children that Friday. Her testimony that she informed the husband by telephone that she continued employment at the Inn in Springfield is contradicted by her clear evidence that she was—for all she then knew—permanently employed in Oklahoma City. These disparate versions by the wife on the issue defeat each other and allow no inference that information of current employment was imparted to the husband by that means. *Adelsberger v. Sheehy*, 322 Mo. 954, 59 S.W.2d 644, 647[6, 7] (1933).

The second contention, that an inquiry at the telephone listed for the wife at the Kearney Street address which she occupied before the sortie to Oklahoma City would have disclosed her then location is only fictive. The evidence on that circumstance was ambiguous. There is no clear account as to the succession of residence the wife adopted after the return from Oklahoma City. One circumstance, however, shows plainly: the wife occupied at least three different addresses between Kearney Street where her first telephone was installed and South Franklin Street which she later occupied with husband Huisenga: Oklahoma City intervened, as did the parental residence in Trenton, Missouri, Rita Strops on Missouri Street in Springfield and, by one account, also a St. Louis Street address in Springfield. When she left Kearney Street for Oklahoma City, the move was permanent by her own account, and nothing suggests that the South Franklin telephone installation was a continuation of the earlier service or listing. The contention that simple inquiry at the earlier listing would have located the wife yields only speculation from the evidence. Nor was there indication the husband had any source for the knowledge that the wife resided at South Franklin by whatever name. If we must assume the improbable, however, that—as the wife testified—at the end of

April the South Franklin Street telephone had been both installed and the number simultaneously printed in the Springfield directory in her then name of Burchett [this, despite the premises were the marital domicile with husband-to-be Huisenga], nevertheless, by then the modification action had commenced, personal service upon the wife attempted and failed at the Oklahoma City and Kearney Street addresses and upon attorney Hammett and service by publication perfected. The husband had by then acquitted his duty of diligence. The position of the wife that such an effort would have located her for personal service does not appear with sufficient substantive effect to have bound the husband, in the exercise of a prudent diligence, to the inquiry the wife contends for. *Williams v. Cavender*, 378 S.W.2d 537, 541[2, 4] (Mo. 1964).

The wife makes a third contention. There was testimony by the son [called as her witness] that on her visit to Kansas City two days before the action to modify custody was commenced the mother then told him she was temporarily at a motel on St. Louis Street in Springfield, and that the son transmitted this information to the father. This evidence suggests that at the time when the custody action impended there was available to the father a certain location for personal service upon the wife which he nevertheless disregarded. This evidence, however, finds only contradiction in the testimony of the wife, herself. According to her testimony, she gave the children the Missouri Avenue address of Rita Strops as her temporary residence. [The street number was never in evidence and, presumably, was not known by the children.] Thus, had the husband acted on the St. Louis Street address, by the testimony of the wife, she was not there to be found.

The case of the wife as proponent of the proceeding to vacate the default judgment founders in uncertainty simply because the wife failed to define her movements from the commencement of the motion to modify to the entry of judgment. There is no frame of reference from which an inference

may be drawn with confidence that the wife was at a given place at a given time actually known to the husband or, the circumstances considered, which a reasonable diligence would have required him to discover. The account as to the succession of her residences during this critical time was garbled, elusive and uncertain. The wife recounted that sequence three times, separately, in response to inquiry from her counsel, opposition counsel and the court. There is no mention of the St. Louis Street address nor, for that matter, of the Trenton address of her parents where she remained at least for a time. There was evidence by the children, however, that they wrote to the mother at the St. Louis Street address but that the last communication was returned addressee unknown. These events are unrelated to date and, even if otherwise probative, bear uncertainly on the knowledge of the husband and his duty of diligence.

The grant of coram nobis to set aside the judgment by default rests on the determination that the husband made no diligent effort to find the wife for personal service on the motion to change custody of the children. The trial court expressly ruled that at the time the husband confronted the wife in Kansas City, two days before the commencement of the action, diligence prompted that he inquire of her as to her address and, when he failed in that, he thereafter inquire at her residence or employment in Springfield, or of the children. The determination that the husband lacked diligence, a mixed question of fact and law, was without substantial basis in the evidence and requires that the coram nobis relief granted the wife be set aside. *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

It is the requirement of due process that a valid judgment quasi in rem be preceded by notice to the absent defendant and an opportunity to be heard. *In re Marriage of Breen*, 560 S.W.2d 358, 364[17] (Mo.App.1977). Rule 54.17 sanctions notice by publication upon an affidavit that service upon the person or by mail cannot be

obtained and that the address of the person to be served is unknown. The rule does not, in terms, describe the diligence expected before service by publication may validly issue, but due process requires an honest and reasonable effort to find the adversary for personal service before the less adequate warning by publication may be sanctioned. *Leichty v. Kansas City Bridge Company*, 354 Mo. 629, 190 S.W.2d 201, 203[4, 5] (Banc 1945). The diligence which must precede publication does not mean an unremitting activity to locate the adversary but an honest and reasonable effort appropriate to the circumstances to enable personal service upon her. 62 Am.Jur.2d, Process, § 117.

The conclusion of the trial court that the husband lacked diligence when, among other lapses, he neglected to ask the wife her address during his conversation with her only two days before the commencement of the custody action, may not be sustained because a prudent person would not have made such an inquiry in the circumstances. The event which the trial court describes was the confrontation between the husband and wife in Kansas City where he had returned the children. The husband had only two weeks earlier been in Springfield to retrieve the children from the juvenile officer involvement and spoken to the wife in Oklahoma City by telephone. She then told him she had gone to that city to marry and gave him her Oklahoma City address. There was clear inference that from the children and from babysitter Mary Maddox he learned that the children were to follow her there within the week for permanent residence. There was no reason to doubt, when he spoke to the wife again in Kansas City only two weeks later, that her residence address had changed. He told her then forthrightly that he was about to bring proceedings to change the custody of the children to him. She did not respond to that announcement nor offer her current address—presumably at Rita Strops or St. Louis Street, or wherever the evidence may be understood to place it—to protect so important an interest.

The further facts found by the trial court to support the judgment: that the husband made no inquiry at the Springfield work or residence places of the wife—we conclude as a matter of law, did not constitute lack of diligence. As we have noted, the husband, as any reasonable person in the circumstances, could only assume that the remarriage of the wife in Oklahoma City, the intended removal of the children there, her employment and new residence there all demonstrated a severance of the former Springfield employment and intention to return. As to the Springfield residences, the husband in fact attempted service by registered mail upon the wife at the Kearney Street address but the letter was returned: "moved left no address." As we have noted, also, the actual locus of the wife at any given time throughout the progression of the litigation is speculative. At the commencement of the custody action the husband had no personal knowledge of the presence of the wife. It could have come to him only by inquiry or disclosure. For the reasons we have given, his actual knowledge would not have prompted a prudent and reasonable person to the inquiry the trial court required. The only other source of information was the children who had also spoken with the mother in Kansas City and who had attempted to speak with her by telephone and by letter in the interim before judgment. The testimony by the wife that she informed the children she was temporarily with Rita Strops on Missouri Street [presumably about the time the action was commenced], but without specific address number, was contradicted by the testimony of her son that she had given him the St. Louis Street address. It is not clear whether that location was merely a convenient means for the wife to receive her mail or whether she ever occupied a room at the motel, but even from the testimony of the children it is clear that not all mail directed there reached the wife, because the last communication from the children was returned: "addressee unknown." Again, the evidence lacks reference to a definite chronology.

The evidence suggests one other possible source of knowledge, or at least occasion for inquiry, by the husband. The wife testified that between March and June of 1975 [the approximate commencement of the action to the entry of default judgment], she was in intermittent telephonic communication with the children in Kansas City and told them where she resided and that she had returned to her old employment [at the Inn]. The mother testified also that the children, in turn, telephoned her at the South Franklin Street [Huisenga] address and at her employment. This entire evidence was contradicted by her son, however, that the children ever called the mother and that his [their] first telephonic conversation with her was *after* her marriage to Huisenga and, we safely assume, *after* the judgment for modification had been rendered. The children had attempted, however, to reach the mother by telephone at the Trenton residence of her parents, but without success. These versions so self-contradict the other as to fail any inference or proof that inquiry of the children would have disclosed to the husband a location for personal service upon the wife. *Pashea v. Terminal R. Ass'n of St. Louis*, 350 Mo. 132, 165 S.W.2d 691, 695[6] (1942).

The wife urges that deposition testimony of the husband be given the effect that he was indifferent to where she could be found for personal service and therefore proof of lack of diligence. The colloquy, once again, was from the Kansas City encounter:

Q. Did she tell you where she was that following Tuesday [in Kansas City]?

A. No.

Q. Did you ask?

A. No.

Q. You really didn't care; did you?

A. No.

The wife translates the response to the leading question: "You really didn't care; did you?" to admit his unconcern for his duty to attempt to locate her for personal service. That answer is more readily understood, in the circumstances, as an exasperation with a mother who moves children without apparent concern from place to place, who cohabits promiscuously with men

in the company of the children, and who, since, bore a child out of wedlock.

■ The procedures employed by the husband—attempted service by registered mail upon the wife at the only two residence addresses known to him, Kearney Street where he retrieved the children in Springfield and the Oklahoma City location given him by the wife only two weeks earlier, and the formal notice to attorney Hammett who had represented the wife in the original proceedings, were sufficient ground for a reasonable and prudent person to believe that the adversary could not be served and so authorized the service by publication that issued. The conduct of the husband to locate the wife was diligent and the service of process upon her by publication was in good faith. *Martin v. McCabe*, 358 Mo. 118, 213 S.W.2d 497, 502[5] (1948).

■ We reverse the coram nobis decree of the trial court and reinstate to full effect the judgment by default entered on June 25, 1975, which modifies the divorce decree of March 20, 1973, and awards custody of the minor son and daughter to the husband. Our judgment restores the father to permanent custody of the children and, therefore, the temporary custody awarded to the father by the trial court as an incident of coram nobis is superseded. We note nevertheless that the trial court was without power to adjudicate the issue of temporary custody on coram nobis without a separate pleading. The issue of temporary custody does not inhere in coram nobis, which goes only to the validity of the prior adjudication, but must be presented on contentions by a pleading for that purpose. The present Dissolution of Marriage Act requires, in any event, that a request for temporary custody be by motion which "must be supported by an affidavit." § 452.380. These prerequisites were not met; therefore, the separate judgment of temporary custody award was coram non judice.

■ The question remains whether the award to the wife of an attorney fee was proper in a proceeding to set aside a judgment to modify an award of custody. Our law allows recovery of such a fee by authority of statute or contract, or on occasion when employed by a court of equity to balance benefits, or as an element of damage to a wronged party in a collateral proceeding brought to correct a breach of duty by the adversary. *Forsythe v. Starnes*, 554 S.W.2d 100, 111[21, 22] (Mo.App.1977). The grant of attorney fee was a regular incident of judgment under the earlier divorce practice, even in the absence of statute, as an exercise of the inherent power of a common law court, and the present Dissolution of Marriage Act [§§ 452.300 to 452.415] codifies the common law practice. In neither, the procedure judicially defined nor that of present statute, however, is there recovery for attorney fee incident to a coram nobis to set aside a default domestic relations judgment. *Fox v. Fox*, 312 S.W.2d 362, 363[3] (1958). Nor could the fee allowance issue as an exercise of equity jurisdiction, since the motion employed by the wife was a common law remedy. We should not be unwilling, however, had the wife prevailed on the collateral attack on the default judgment by writ of coram nobis to sustain the grant of attorney fee. The rule in *Forsythe v. Starnes, supra,* and kindred cases, allows such a recovery in a collateral litigation [such as coram nobis] where the contender shows [l.c. 111]: that the collateral litigation is the natural and proximate result of a wrong or breach of duty by the adversary; that the counsel fee was incurred in good faith and necessity to protect the wronged party from injury; and that the counsel fee is reasonable. We have determined the wife had judgment taken against her in a manner compatible with due process of law, and therefore was not wronged, and so has no access to that remedy for allowance of attorney fee.

The judgment in appeal No. KCD 29,509 is reversed and the award of permanent custody of the two minor children to the father is reinstated and the allowance of attorney fee and suit money to the wife is set aside. The judgment in appeal No. KCD 29,526 is reversed and the grant of temporary custody of the children to the father is set aside and superseded by the reinstated award to him of their permanent custody. The order of the trial court that

the obligation of the father for child support from March 10, 1975, to January 28, 1977, under the terms of the prior award be deemed satisfied is affirmed. It is further ordered that each party bear equally the costs of the action.

All concur.